# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GERALDINE GUTIERREZ, as Administrator of the ESTATE OF JOSE MARTINEZ TORRES,<br><br>Petitioner,<br><br>vs.<br><br>DIRECTOR, DEPARTMENT OF REVENUE AND TAXATION,<br><br>Respondent. | CIVIL CASE NO. 16-00082<br><br>**ORDER** |

Before the court is the Department of Revenue and Taxation's ("DRT")'s Motion for Court to Assume Jurisdiction and to Decide Motions for Summary Judgment and to Amend Answer (ECF No. 103). For the reasons stated herein, the motion to assume jurisdiction is granted and this court will decide the two motions filed by DRT. This court will also decide the motion for Judgment on the Pleadings (ECF No. 43), brought by Petitioner Geraldine Gutierrez, as Administrator of the Estate of Jose Martinez Torres ("the Estate").

Having assumed jurisdiction, this court resolves the pending motions in this case as follow: DRT's Motion to Amend Answer (ECF No. 93) is **DENIED**. The motion for Judgment on the Pleadings (ECF No. 43), brought by Petitioner Geraldine Gutierrez, as Administrator of the Estate of Jose Martinez Torres ("the Estate"), is considered to be a motion for summary judgment, and it is **GRANTED**. DRT's Motion for Summary Judgment (ECF No. 80) is **DENIED.**

1

# I. BACKGROUND

This case concerns the Estate's tax liability related to two tracts of land that the Estate acquired from the Guam Ancestral Lands Commission in 2005 and 2006. While the ultimate ownership of those tracts is currently being litigated in Guam Superior Court (CV 1124-09), it is uncontested that the Estate sold both properties between 2007 and 2010. Although the Estate paid capital gain taxes stemming from those sales, the DRT served the Estate with a Notice of Deficiency (NOD) indicating that the Estate owed additional capital gain taxes. The Estate brought the present suit to challenge that NOD.

## A. Factual History

Jose Martinez Torres owned the property in question when he died on May 9, 1950. Pet. at ¶ 10(h), ECF No. 1; Answer at ¶ 8, ECF No. 6. On June 30, 1950, the federal government condemned portions of that property and paid Mr. Torres's estate ("the Estate") $8,008 pursuant to a Declaration of Taking. Pet's Statement of Facts at 2-3, ECF No. 87. The federal government held the land until 1994, when, pursuant to the Guam Excess Lands Act, Congress conveyed the land to the Government of Guam. *Id*. at 3. The Guam Legislature subsequently enacted the Guam Ancestral Lands Act, which created the Guam Ancestral Lands Commission ("GALC") to manage lands taken by the federal government. In 2005 and 2006, respectively, the GALC awarded Dededo Lots 5039 and 5041 to the Estate. *Id.* at 4. The Estate sold the Lots together for $19,109,239, to be paid in installments from 2007 to 2010. Pet., Ex. 6 at 6, ECF No. 1-2.

On June 7, 2011, the Estate filed amended tax forms for the years 2007 through 2010. Pet's Statement of Facts at 6, ECF No. 87. Therein, the Estate used an appraised value of the properties as of 2007—$12,293,059—as the basis for capital gains taxes resulting from the sale of the properties. *Id*.

On August 10 and September 15, 2016, respectively, DRT sent the Estate a NOD and an

Amended NOD.[1] Pet. at ¶¶ i, j, ECF No. 1. Therein, DRT asserted deficiencies of $144,223, $123,277, $457,160, $1,290,303 for the tax years 2007, 2008, 2009, and 2010, respectively, plus penalties. Pet., Ex. 5 at 23, ECF No. 1-1. These deficiencies resulted from the DRT's calculation of the amount that the Estate owed in capital gains taxes stemming from the sale of the two properties. Pet's Statement of Facts at 7, ECF No. 87. The DRT considered the proper cost basis for the property to be the amount paid to the Estate in 1950: $8,008. *Id.* The DRT reasoned that the two tracts of land were gifts to the Estate, so, pursuant to the Guam Territorial Income Tax Code ("GTITC")[2] § 1015, the cost basis is "as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift," i.e., the price that the federal government paid for the land in 1950. Pet., Ex. 6 at 10, ECF No. 1-2; DRT Decl., Ex. 3 at 62, ECF No. 82-3.

**B. Procedural History**

On November 29, 2016, the Estate filed a Petition for Re-Determination of Deficiency. Pet., ECF No. 1. Therein, the Estate argued that the NOD lacked adjustments for the year 2008 and that the DRT erroneously applied a cost basis of $8,008 when calculating the Estate's capital gains resulting from the sale of the land. *Id.* at 3. The Estate argued that the proper cost basis was not what the government paid for the land in 1950 ($8,008), but rather the "fair market value" of the land when the Estate received it from the Government of Guam in 2005 and 2006. Pet. at ¶ 10(g), ECF No. 1. The Estate cited GTITC § 1014 as a potential source for determining the property's cost basis. *Id.* at ¶ 10(h). The Estate further argued that the Notice of Deficiency was premature because the taxation of the property cannot be determined until its ownership is

---

[1] The two notices are nearly identical; the Amended NOD merely corrects a statement in the original NOD that no Protest had been filed by the Estate. Pet., Ex. 5 at 21, ECF No. 1-1. The Amended NOD correctly states that the Estate timely filed a Protest. Hereafter, when this court mentions the NOD, this court refers to the operable Amended NOD.

[2] The Guam Territorial Income Tax mirrors the Internal Revenue Code of the United States, with substitutions as necessary. 48 U.S.C. § 1421i. Thus, GTITC § 1015 is substantively identical to IRC § 1015, with the term "Governor" substituted for "Secretary." *See* 48 U.S.C. § 1421i(e).

definitively determined by the Guam Superior Court in CV 1124-09. *Id.* at ¶ 10(l), ECF No. 1.

In its Answer, the DRT denied that GTITC § 1014 was applicable to this case. Answer at ¶ 8, ECF No. 6. DRT further "[a]dmit[ted] that the taxation of the property and the proceeds cannot proceed until CV1124-09 is resolved." *Id*. at ¶ 12.

On September 6, 2017, the Estate moved for judgment on the pleadings, arguing that the DRT's answer revealed that the NOD was invalid. Mot. Judg. Pleadings, ECF No. 43. According to the Estate, when the DRT admitted in its Answer that "the taxation of the property and the proceeds cannot proceed until CV1124-09 is resolved," the DRT effectively admitted that the NOD is void. *Id*. at 3. In its Opposition to Petitioner's Judgment on the Pleadings, the DRT explained that it "had no choice" but to file the NOD in September 2016—before the Guam courts resolved the property's ownership—in order to comply with the three-year statute of limitations provided in GTITC § 6501(a). Opp. at 3-4, ECF No. 53. At a hearing on Petitioner's motion for judgment on the pleadings, the DRT repeated that statute-of-limitations explanation, and further stated: "[T]his is, admittedly, a conditional case, but Rev Tax understands that. They know that they will not collect money if CV1124-09 goes in the government's favor." Reply, Ex. A at 22, ECF No. 59-1. The DRT further characterized any judgment prior to CV1124-09's resolution as a "theoretical result." *Id.*

In a Supplemental Brief in Support of Motion for Judgment on the Pleadings, the Estate directed this court to a related case, *Ciriaco Sanchez, as Administrator of the Estate of Pablo Sanchez v. Director of the Department of Revenue and Taxation*, 16-CV-00081. Supp. at 1-2, ECF No. 68. Like the instant case, the *Sanchez* case concerned the tax basis of properties that were sold after the GALC awarded them to a decedent's heirs. In the *Sanchez* case—as here— the DRT had determined that the property was a "gift" pursuant to GTITC § 102 & 1015. Razzano Decl., Ex. B at 21 ¶ 19, ECF No. 69. However, the DRT subsequently admitted that that

determination was in error. *Id*. at ¶ 25. It argued instead that the proper tax basis of the property was the fair market value of the property at the date of the decedent's death," pursuant to GTITC 1014(a)(1). Razzano Decl., Ex. A at 13, ECF No. 69. Because the DRT had not determined the fair market value of the Sanchez property at the time of Sanzhez's death in 1963, the DRT argued that "we must either have a trial on that issue or remand the case back to DRT for a determination of the lot's pertinent value." *Id*. at 14-15. The Estate pointed to the DRT's admission in the *Sanchez* case to argue that the NOD in the present case is invalid because it relies on the same untenable "gift" legal theory. Supp. at 2-3, ECF No. 68.

In a response to the Estate's Supplemental Brief, DRT admitted that it was abandoning the GTITC § 1015 gift theory. DRT Supp. Br. at 2, ECF No. 70. Instead, DRT argued that GTITC § 1014 provided the cost basis of the property: "the fair market value of the property at the date of the decedent's death." Nonetheless, DRT maintained that $8,008.00 was still the correct cost basis, because that was the amount that the federal government paid to Mr. Torres's estate for the property shortly after his death, so it is the best estimate of the property's value. *Id.* at 5.

While the Estate's Motion for Judgement on the Pleadings was pending, DRT moved for summary judgment pursuant to FRCP 56, asserting essentially the same arguments as in its response to the Estate's Supplemental Brief. Mot. Summ. Judg., ECF No. 80. The Estate opposed, arguing that this court lacks jurisdiction to consider this case because the ownership of the properties is currently being litigated in the Guam Superior Court case. Opp. at 6, ECF No. 88. The Estate further argued that DRT had improperly raised a new legal theory in its motion for summary judgment—GTITC § 1014—which DRT had explicitly rejected in its Answer. *Id.* at 12.

In response to Petitioner's opposition, DRT moved to amend its answer to clarify that the

5

DRT "no longer asserts that the GALC award was a gift," but instead is basing its calculations on § 1014. Mot. to Amend Answer at 5, ECF No. 93. The Estate opposed that Motion to Amend, arguing that such an amendment would be futile and would cause undue delay and prejudice against the Estate. Opp. at 2, ECF No. 99.

On September 30, 2018, this court issued an Order staying this case. Order, ECF No. 101. Given the uncertainty surrounding the property's ultimate ownership, this court reasoned that it could not determine whether it had jurisdiction. *Id.* at 6. This court ordered the parties to submit a joint status report indicating the status of the Guam Superior Court case and clarifying their positions as to whether this case should be stayed pending the outcome of that case. *Id.*

On October 12, 2018, the parties submitted a Joint Status Report, in which they predicted that the Guam Superior Court case "will go on for the better part of another decade." Joint Status Report at 2, ECF No. 102. The parties adopted conflicting positions as to whether this court should stay this case. *Id.* The DRT explained its position in detail in its subsequent Motion to Assume Jurisdiction, ECF No. 103. Therein, the DRT argued that the uncertainty of the ultimate ownership of the property does not affect this court's jurisdiction, because the "claim of right" doctrine allows property to be taxed even if its ownership is contested. *Id.* at 3.

## II. DISCUSSION

### A. This Court Has Subject Matter Jurisdiction Over this Case

The Estate first argues that this court lacks subject matter jurisdiction because the ownership of the properties is being litigated in the Guam Superior Court case. Opp. to Mot. to Assume Jurisdiction at 3-4, ECF No. 104. Until that case is resolved, the Estate contends, the Estate cannot be taxed for capital gains resulting from the Estate's sale of the properties. *Id.*

The DRT initially agreed that any judgment in this case would be contingent on the outcome of the Guam Superior Court case. Answer at ¶ 12, ECF No. 6 (DRT conceding in its

Answer, "[T]he taxation of the property and the proceeds cannot proceed until CV1124-09 is resolved."); Reply, Ex. A. at 22, ECF No. 59-1 (DRT stating at a hearing: "this is, admittedly, a conditional case," DRT "will not collet money if CV1124-09 goes in the government's favor," and any judgment in this case prior to CV1124-09's resolution would be a "theoretical result.").

But the DRT's position has changed. It now argues that uncertainties surrounding the property's ultimate ownership do not affect the outcome of this case. Mot. Assume Jurisdiction, ECF No. 103. The DRT explains that federal courts have created the "claim of right" doctrine to address this contingency. Under that doctrine, taxable income includes property received "under a claim of right and without restriction as to its disposition . . . even though it may still be claimed that [the taxpayer] is not entitled to retain the [property]." *N. Am. Oil Consol. v. Burnet*, 286 U.S. 417, 424 (1932). According to this doctrine, the DRT claims, regardless of the possibility that the 2007-2010 sale may be invalidated in the future, the Estate's receipt of income exposes the Estate to capital gains tax liability. Thus, concludes DRT, there is no jurisdictional reason for this court to delay its judgment in this case.

The Ninth Circuit has applied the "claim of right" doctrine to circumstances analogous to those presented in this case. *See United States v. George*, 420 F.3d 991 (9th Cir. 2005). The taxpayer in *George*, Randolph George, was court-appointed as the receiver for "financially troubled radio stations." *Id*. at 994. In that role, George received several hundred thousands of dollars in receiver fees. *Id*. Those fees were "subject to court review and possible disgorgement." *Id*. Nonetheless, despite the possibility that George would eventually have to return the fees, George was required to report those fees as income in the year that he received them. *Id.* at 997-98. In other words, the possibility of income being lost in the future did not affect how the income was taxed, and that possibility certainly did not deprive the federal court of jurisdiction to hear George's case.

7

The Estate responds that "the claim of right" doctrine does not, by itself, confer jurisdiction upon this court. Opp. to Mot. to Assume Jurisdiction at 5, ECF No. 104. That doctrine "is used to determine *when* income is taxable rather than *whether a receipt is taxable income*." *Id*. (citing *Bohan v. United States*, 456 F.2d 851, 853 (8th Cir. 1972)). The Estate concludes that the "claim of right" doctrine has little relevance to this case.

The Estate is correct that "the claim of right" doctrine does not confer jurisdiction upon this court—but other statutes do. GTITC § 6213 authorizes taxpayers to file petitions for redetermination of a final NOD, and Local Tax Rule 2 clarifies that taxpayers in Guam should file such a petition before this district court. While the Estate is correct that the primary purpose of "the claim of right" doctrine is to determine *when* income is taxable, for our purposes, the "claim of right" doctrine merely establishes that "possible disgorgement" of income in the future does not deprive this court of jurisdiction to hear a redetermination of a deficiency. *See George*, 420 F.3d at 998. Thus, uncertainties surrounding the properties' ownership stemming from the Guam Superior Court case do not deprive this court of jurisdiction.

Accordingly, the DRT's Motion to Assume Jurisdiction is **GRANTED**. This court will now consider the pending motions in this case.

### B. The DRT's Motion to Amend its Answer is DENIED

The court first turns to the DRT's Motion to Amend its Answer. Mot. Amend, ECF No. 93. As noted above, the DRT filed this Motion one-and-a-half years after its Answer, while two dispositive motions were pending: the Estate's Motion for Judgment on the Pleadings (ECF No. 43) and the DRT's Motion for Summary Judgment (ECF No. 80). The Estate argues that the DRT's Motion to Amend should be denied because it has been filed late and in bad faith. Opp. at 5, ECF No. 99.

Leave to amend an answer "shall be freely given when justice so requires," Fed. R. Civ.

Pro. 15(a)(2), but a court may deny such a motion for various reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1991), *abrogated in part on other grounds by Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 692-93 (9th Cir. 2001); *see also Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (affirming a district court's denial of a motion to amend that was clearly brought to avoid summary judgment).

By the DRT's own admission, it is moving to amend its answer "in order to counter [an] argument" in the Estate's Opposition to DRT's Motion for Summary Judgment. Mot. Amend at 1, ECF No. 93. That is an improper motive for a motion to amend answer. *Schlacter-Jones*, 936 F.2d at 443. The motion is also late, given that discovery in this case has closed. *Id*. Granting amendment at this late stage would prejudice the Estate, because the Estate was responding to the DRT's original Answer when it briefed both its Motion for Judgment on the Pleadings and the DRT's Motion for Summary Judgment.

Accordingly, this court finds that the DRT's motion is unreasonably late, brought for the improper purpose of avoiding summary judgment, and granting it would unfairly prejudice the Estate. Thus, the DRT's Motion to Amend its Answer is **DENIED.**

**C. The DRT Has Issued a Valid, Final Notice of Deficiency**

In its Motion for Judgment on the Pleadings,[3] the Estate argues that DRT has failed to

---

[3] In ruling on the Estate's Motion, this court is considering matters raised within briefings related to the DRT's Motion for Summary Judgment. Therefore, because this court is considering matters outside of the pleadings, this court treats the Estate's Motion for Judgement on the Pleadings "as one for summary judgment under Rule 56." Fed.

9

1  issue a valid, final NOD. Mot. Judg. Pleadings, ECF No. 43. The Estate argues that the DRT's
2  answer—in which the DRT "[a]dmits that the taxation of the property cannot proceed until
3  CV1124-09 is resolved"—reveals that the NOD was issued prematurely. *Id.* at 3. The Estate
4  additionally argues that the DRT has failed to make a final determination as to the Estate's tax
5  liability, because the DRT relied on a legal theory that the DRT now admits is erroneous. Pet's
6  Supp. Brief at 2-3, ECF No. 68. Citing *Scar v. C.I.R.*, 814 F.2d 1363, 1370 (9th Cir. 1987), the
7  Estate argues that the DRT's failure to make a final determination of tax liability requires
8  dismissal for lack of jurisdiction.

The Estate's arguments notwithstanding, the record is clear that the DRT made a substantive determination as to the Estate's tax liability prior to issuing the NOD. According to the NOD, the DRT calculated that the Estate has deficiencies of $144,223 for the tax year 2007, $123,277 for 2008, $457,160 for 2009, and $1,290,303 for 2010. Pet., Ex. 5 at 24-27, ECF No. 1-1. Those deficiencies reflect particularized determinations that the DRT made with respect to the Estate's tax liability. This case is therefore clearly distinguishable from *Scar*, wherein taxpayers challenged NODs that lacked information particular to their tax liability. *Scar*, 814 F.2d at 1366-67. The NOD in this case fulfills the DRT's statutory duty of notifying the Estate that the DRT "has determined that a deficiency exists and specifies the amount of the deficiency." *Selgas v. C.I.R.*, 475 F.3d 697, 700 (5th Cir. 2007). While the DRT admittedly calculated those deficiencies pursuant to an erroneous legal theory, the DRT's subsequent abandonment of that theory does not render the NOD invalid. *See QinetiQ US Holdings, Inc. & Subsidiaries v. Commissioner*, 845 F.3d 555, 560 (4th Cir. 2017) ("After issuing a Notice of deficiency, however, the IRS may later assert in the tax court new legal theories . . . .").

In conclusion, the NOD fulfills the statutory requirement of providing notice to the Estate

---

R. Civ. Pro. 12(d).

of a deficiency, and the amount of that deficiency. GTITC § 6212. Because the DRT has issued a valid NOD, and the Estate has timely filed a Petition for Re-determination of Tax Liability, this court will proceed with redetermining the Estate's liability.

### D. The Estate Has Applied the Correct Cost Basis to the Properties

At last, we arrive at the merits of this dispute: whether the proper cost basis is the value of the properties in 1950, when Mr. Torres died, or their value in 2005 and 2006, when the Estate reacquired them.

The DRT initially argued that "the property was acquired by gift," so the basis is "the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift." Treating the 2006-2007 conveyance of the properties as a gift from the Government of Guam, the DRT reasoned that the cost basis was the price that the federal government paid in 1950: $8,008. Supp. at 2, ECF No. 7. But, having rejected the GTITC § 1015 theory, the DRT now argues that the proper cost basis is provided in GTITC § 1014, which provides that "the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent' death by such person, be—(1) the fair market value of the property at the date of the decedent's death . . . ." The DRT maintains that the best estimate of the lots at the time of Mr. Torres's death is $8,008, because that is the amount that the Government paid for it. Mot. Sum. Judg. at 13, ECF No. 80.

The Estate first argues that this court should disregard the DRT's § 1014 theory as an issue not raised in the DRT's pleadings. Opp. at 8, ECF No. 88-1 (citing *Robertson v. C.I.R.*, 55 T.C. 862, 865 (1971)). To be sure, the DRT's shifting legal position is unseemly. But, rather than prohibiting the argument altogether, this court finds that the proper result is to shift the burden of proof from the Estate to the DRT, because the DRT has raised a "new matter." Rule 142(a)(1).

11

1 This is because, assuming this court agrees with the DRT's § 1014 theory, it will be necessary to
2 determine the fair market value of the properties in 1950. Because that determination will require
3 "the presentation of different evidence," it constitutes a "new matter" that shifts the burden of
4 proof. *Tabrezi v. C.I.R.*, T.C. Memo 2006-61, 2006 WL 826552, at *3-4 (2006). Thus, the DRT
5 has the burden of proof to establish the Estate's tax deficiency.

6 Turning, at last, to the merits of the DRT's § 1014 theory, this court finds two glaring
7 flaws. First, GTITC § 1014 does not appear to apply at all, because the Estate did not acquire the
8 properties "from a decedent or to whom the property passed from a decedent." Section 1014(b)
9 lists the types of property that are "considered to have been acquired from or to have passed from
10 the decedent." None of those enumerated subsections appear to apply to this scenario,[4] wherein
11 the federal government condemned an individual's property *after* his death, but then, over half a
12 century later, the Guam government decided to return it to the decedent's heirs. This is not
13 "property acquired from a decedent" within the meaning of GTITC § 1014.

14 Even if § 1014 applied, the second problem with the DRT's position is its assertion that
15 the fair market value of the lots—which sold for nearly $20 million in 2016—was a mere $8,500
16 in 1950. Mot. Sum. Judg. at 13, ECF No. 80. That is the paltry amount that the federal
17 government paid one month after Mr. Torres's death. Sales such as these are what led to the
18 GLAC's creation in the first place, because the Guam Legislature deemed them to be
19 "unconscionable, unfair, unjust and inequitable." Guam Pub. L. 25-45, § 2(c), at 8-10 (enacted
20 6/9/1999). In asserting that $8,500 is the correct valuation of the properties, the DRT ignores that
21 history and clearly undervalues them.

22 By contrast, the Estate's position is straightforward: The GALC awards constituted
23 income to the Estate pursuant to GTITC § 61, so the basis of the properties is their value when

---

[4] The DRT has cited to no applicable subsection.

the Estate acquired them in 2005 and 2006. Opp. at 15-16, ECF No. 88. This court agrees. Absent some exception within the GTITC, the GLAC awards are included within § 61's definition of "gross income." This case is highly analogous to *Bary's Estate v. C.I.R.*, 368 F.2d 844, 844 (2d Cir. 1966), wherein the Second Circuit Court of Appeals held that property awarded to a decedent's estate through the Foreign Claims Settlement Commission constituted income to the estate. Thus, the proper cost basis of the properties is, as the Estate claimed in its tax returns, the properties' value when the Estate acquired them in 2005 and 2006.

### III. CONCLUSION

The proper basis for the properties is, as the Estate claimed in its tax returns, the properties' fair market value at the time they were awarded to the Estate. Because the DRT has not contested the Estate's valuation of the properties at those times, this court will assume that the Estate's valuation was correct. Thus, there being no genuine factual dispute between the parties, and the court having concluded that the Estate is entitled to judgment as a matter of law, the Estate's Motion for Judgment on the Pleadings is **GRANTED**, and the DRT's Motion for Summary Judgment is **DENIED.**

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
 **Chief Judge**
**Dated: Sep 30, 2019**